IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────

PETER COLON,

               Plaintiff,

     v.                                   Civil Action No.
                                       9:07-CV-0727 (DNH/DEP)

JAMES PLESCIA, Superintendent, *et al.*,

               Defendants.

─────────────────────────────────────────

APPEARANCES:                   OF COUNSEL

FOR PLAINTIFF:

PETER COLON, *Pro Se*
99-A-5455
Eastern NY Correctional Facility
Box 338
Napanoch, NY 12458

FOR DEFENDANTS:

HON. ANDREW M. CUOMO      DEAN J. HIGGINS, ESQ.
Attorney General of the State    Assistant Attorney General
  of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Peter Colon, a New York State prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this action pursuant to 42 U.S.C. § 1983 alleging deprivation of his civil rights arising out of his incarceration.  In his complaint, plaintiff asserts that medical personnel at the facility in which he was incarcerated at the relevant times were deliberately indifferent to his serious medical needs in failing to adequately diagnose and treat an oral abscess resulting from a dental procedure over a period of a few days, causing him to suffer extreme pain and fear for his life.  In his complaint, plaintiff seeks recovery of damages in the amount of twenty million dollars.

Currently before the court is a motion by defendants for summary judgment dismissing plaintiff's complaint.  In their motion, defendants argue that the record fails to disclose participation in the events giving rise to his claims on the part of James Plescia, the superintendent of the prison facility at which the alleged incidents occurred, or Ms. Griffin, a nurse administrator at that facility.  Defendants argue further that the record fails to establish a basis upon which a reasonable fact finder could conclude that any of the defendants were deliberately indifferent to

2

Colon's serious medical needs, and, in any event, that they are shielded from suit by the doctrine of qualified immunity.  Based upon a careful review of the record now before the court, considered in light of defendants' arguments, I recommend that their motion be granted.

I.      BACKGROUND[1]

        Plaintiff is a prison inmate entrusted to the care and custody of the New York State Department of Correctional Services ("DOCS"); at the times relevant to his claims in this action, Colon was designated to the Washington Correctional Facility ("Washington"), located in Comstock, New York.  *See generally* Second Amended Complaint (Dkt. No. 8).  The events giving rise to plaintiff's claims are well chronicled, including in his ambulatory health records ("AHR"), and occurred over a five-day period during January of 2006.[2]  *See Id.*

        The circumstances giving rise to plaintiff's claims were set in motion on January 13, 2006, when he had a tooth filled at the dental clinic at

_____

        [1]      In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the plaintiff.  *See Burtnieks v. City of New York,* 716 F.3d 982, 985-86 (2d Cir. 1983) (citations omitted).

        [2]      Relevant excerpts from plaintiff's AHR are included in Exhibit 3 to defendants' motion.  See Dkt. No. 37-9. In light of the sensitive nature of the information contained within plaintiff's medical records, that exhibit has been filed under seal with court approval.

Washington.  See Second Amended Complaint (Dkt. No. 8) at p. 2; *see
also* Defendants' Exhibits (Dkt. No. 39-7) Exh. 4 at p. 11.  After completion
of the dental procedure, plaintiff was given a supply of pain medication, in
the form of what Colon has described as a large quantity of ibuprofen.
Defendants' Exhs. (Dkt. No. 37-9) Exh. 4 at p. 13.

At 8:30 on the following evening, plaintiff went to emergency sick
call at the facility clinic.[3]  Second Amended Complaint (Dkt. No. 8) at p. 2;
*see also* AHR at p. 9.  On that occasion Colon was seen by defendant A.
Mosher, a facility nurse, complaining of pain in his jaw, ear and throat, and
on the left side of his face.  Second Amended Complaint (Dkt. No. 8) at p.
2; *see also* Mosher Decl. (Dkt. No. 37-5) ¶ 7.  Since plaintiff had already
been seen by dental personnel the day before, had been provided with
pain medication, and was scheduled to be seen by a doctor in the near
future, Nurse Mosher ordered that plaintiff be returned to his housing unit.
Mosher Decl. (Dkt. No. 37-5) ¶¶ 8-12.

Plaintiff returned to the facility clinic on Monday, January 16, 2006,
again to attend emergency sick call.  Second Amended Complaint (Dkt.
No. 8) at p. 3.  On that occasion Colon was seen by Darlene Stipano, a

---

[3]      Pursuant to the policies in place at Washington, emergency sick calls are
typically reserved for life threatening illnesses.  *See* Mosher Decl. (Dkt. No. 37-5) ¶ 6.

registered nurse.  Stipano Decl. (Dkt. No. 37-4) ¶ 10; *see also* AHR at p. 9.  That date was a holiday, and as such, there was no regular sick call and no doctor's appointments were scheduled at the facility for that date. Stipano Decl. (Dkt. No. 37-4) ¶ 11.  Plaintiff complained to Nurse Stipano of not feeling well and having a sore throat, indicating that he could not swallow.  *Id*. ¶ 13.   Nurse Stipano examined plaintiff, aware that Colon had a tooth filled on January 13, 2006 and had been seen by another nurse at emergency sick call on January 14 2006, and also that he had a doctor's appointment scheduled for January 23, 2006.  *Id*. ¶¶ 11-12. Nurse Stipano took plaintiff's temperature, which registered at 99.8 degrees, but was unable to proceed further with her examination in light of plaintiff's statement that he was leaving if he could not see a doctor.  *Id. ¶¶* 15-17.

The following day plaintiff was seen by Dr. Neil Trachtman, a physician and the Health Services Director at Washington.  Second Amended Complaint (Dkt. No. 8) at p. 4; *see also* Trachtman Decl. (Dkt. No. 37-3) ¶ 15.  During that examination, plaintiff complained of a sore throat and difficulty in swallowing.  Trachtman Decl. (Dkt. No. 37-3) ¶ 16; *see also* AHR at p. 8.   Dr. Trachtman's initial examination revealed no

gross abnormalities.  Trachtman Decl. (Dkt. No. 37-3) ¶ 17.  Dr.

Trachtman noted that plaintiff did not appear to be in distress, was able to

swallow his own saliva and drink water, and was tolerating swallowing

other liquids.  *Id.* ¶¶ 17, 20-21. Dr. Trachtman also noted that plaintiff's

cervical nodes were palpated, and his neck was supple.  *Id*. ¶ 22.  Dr.

Trachtman conducted a partial examination of plaintiff's mouth, finding

nothing medically wrong, but was unable to complete the process when

plaintiff became agitated and terminated the examination.[4]  *Id*. at ¶¶23-24.

Plaintiff returned to the facility clinic on January 18, 2006, at which

time he initially saw Nurse Stipano, continuing to complain of pain but

refusing any further pain medication. Stipano Decl. (Dkt. No. 37-4) ¶ 19;

*see also* AHR at p. 7.  Plaintiff was again seen on that date by Dr.

---

[4]       The record reveals some controversy regarding the circumstances
leading to termination of Dr. Trachtman's examination on January 17, 2006.  Dr.
Trachtman asserts that during the examination plaintiff's attitude toward him was poor,
and that Colon mimicked and repeated each question rather than responding in a way
that would permit the physician to properly assess his condition.  Trachtman Decl.
(Dkt. No. 37-3) ¶ 18. Noting that such conduct was consistent with chart entries
indicating a poor attitude on the part of plaintiff toward facility nurses during other
visits, *see id.*, ¶ 19, Trachtman states that when his examination continued and he told
plaintiff he could not see that there was a problem, plaintiff became upset and abruptly
terminated the examination before it could be completed.  *Id.* ¶¶ 23-24.  During his
deposition, by contrast, plaintiff testified that it was Dr. Trachtman who became angry
during the examination and threatened him with physical harm when plaintiff indicated
disagreement with his diagnosis.  *See* Defendants' Exh. (Dkt. No. 37-9) Exh. 4 at pp.
31-32.

Trachtman, at the physician's request out of concern that he was unable to complete his examination on the prior day.  Trachtman Decl. (Dkt. No. 37-3) ¶ 25.  On that occasion plaintiff was cooperative with the examination, which when completed revealed a sub-glossal swelling, attributed by Dr. Trachtman to an abscess which, in his opinion, resulted from the tooth filling on January 13, 2006.  Trachtman Decl. (Dkt. No. 37-3) ¶ 27.  Determining that plaintiff would need an incision and draining of the abscess, as well as antibiotics, an IV and hydration, Dr. Trachtman referred Colon to the Albany Medical Center Hospital ("AMCH") emergency room, where the abscess was drained on that same day.  *Id.* ¶¶ 31-33.

Plaintiff remained at the AMCH for testing regarding other, unrelated conditions until January 20, 2006, with no further complications related to his abscess.  *Id*. ¶¶ 33-35.  Upon his return to Washington, Colon was seen by Dr. Trachtman on January 23, 2006; at that time the physician noted that the plaintiff was continuing his prescribed medications, and had no further complaints.  *Id.* ¶ 37;  *see also* AHR at p. 4.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on July 12, 2007, and has since

7

twice amended his complaint, having filed the second amended complaint, the operative pleading now before the court, on October 22, 2007. Dkt. Nos. 1 and 8.  In his complaint, as amended, plaintiff names as defendants James Plescia, the Superintendent at Washington; Darlene Stipano, a Registered Nurse at the facility; Dr. Neil Trachtman, Health Services Director at the facility; Ms. Griffin, a Nurse Administrator; and, A. Mosher, also a Registered Nurse at Washington, asserting a claim of deliberate indifference to his serious medical needs, in violation of his rights under the Eighth Amendment, against each of the defendants.[5]

Following the joinder of issue and completion of pretrial discovery, defendants moved for summary judgment dismissing plaintiff's complaint. In their motion, defendants argue that 1) plaintiff's claims against defendants Plescia and Griffin should be dismissed, based upon a lack of their personal involvement in the conduct giving rise to the alleged constitutional deprivation; 2) no reasonable fact finder could conclude that

---

[5]     In his complaint plaintiff refers to Dr. Trachtman as "Trachmen."  In addition, plaintiff's complaint purports to name S. Ramora, R.N. as a defendant.  In her declaration, however, Nurse Stipano states that she is the registered nurse, identified as #286, who saw the plaintiff on January 16 and January 18, 2006 and was apparently intended to be named by Colon as a defendant.  The clerk will, therefore, respectfully be asked to adjust court records to reflect the true spelling of Dr. Trachtman's name and substitute Darlene Stipano, R. N. for defendant S. Ramora, R.N.

defendants were deliberately indifferent to plaintiff's serious medical needs; and, 3) in any event, they are entitled to qualified immunity from suit.  Plaintiff has responded in opposition to defendants' motion, *see* Dkt. No. 40, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c); *see also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Summary Judgment Standard

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material," for purposes of this inquiry, if it "might affect

the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A party seeking summary judgment bears the initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith*

10

*Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party.  *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Plaintiff's Failure To Respond To Defendants' Local Rule 7.1(a)(3) Statement

In support of their motion, defendants have properly submitted a statement pursuant to Northern District of New York Local Rule 7.1(a)(3) setting forth in a concise fashion material facts which, they contend, are not genuinely disputed.  Plaintiff's opposition to the pending summary judgment motion fails to include a responding 7.1(a)(3) statement or to

11

otherwise reveal which, if any, of the facts set forth in defendants' Local Rule 7.1(a)(3) statement are controverted.

The consequences of this failure are potentially significant.  By its terms, Local Rule 7.1(a)(3) provides that "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *See* N.D.N.Y.L.R. 7.1(a)(3).  Other judges from this district have found it appropriate to invoke Rule 7.1(a)(3) and its predecessor, Rule 7.1(f), deeming facts included within a Local Rule 7.1(a)(3) statement to have been admitted based upon the failure of opposing party's to properly respond.  *See, e.g. Elgamil v. Syracuse Univ.,* No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't. Of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).[6]  Although it is unlikely to be outcome determinative in this instance, I recommend that the court deem the facts set forth in defendants' Local Rule 7.1(a)(3) statement to have been admitted by the plaintiff by virtue of his failure to properly respond to that

---

[6]     As to those facts not contained in the defendants' Local Rule 7.1(a)(3) statements, I assume for purposes of this motion that plaintiff's version of those facts is true, as plaintiff is entitled to the benefit of all inferences at this stage.  *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998).

statement.

C.    Personal Involvement

A fundamental, bedrock requirement for establishing liability of a

defendant under section 1983 is that the party was personally involved in

some way in the alleged deprivation of constitutional rights.  *Wright v.

Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of

Brookfield*, 920 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568

F.2d 930, 934 (2d Cir. 1977)).  In order to prevail on a section 1983 cause

of action against an individual, a plaintiff must therefore show some

tangible connection between the constitutional violation alleged and that

particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.

1986).

Very often, as appears to be the case with regard to Superintendent

Plescia and Nurse Administrator Griffin, higher ranking prison officials are

named by inmates as defendants based purely upon their roles as

supervisors and the oversight responsibilities which accompany their

positions.  It is well-established, however, that a supervisor cannot be

liable for damages under section 1983 solely by virtue of being a

supervisor; there is no *respondeat superior* liability under section 1983.

*Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright v. Smith*, 21 F.3d at 501.  Mere vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to bridge the gap and establish the requisite personal involvement and support a finding of liability.  *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir. 2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim . . .  [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights.").

While *respondeat superior* will not suffice to establish liability, culpability on the part of a supervisory official for a civil rights violation can be established in one of several ways, including when that individual 1) has directly participated in the challenged conduct; 2) after learning of the violation through a report or appeal, has failed to remedy the wrong; 3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) was grossly negligent in managing the subordinates who caused the unlawful event; or 5) failed to act on information indicating that unconstitutional acts were occurring.  *Iqbal v.*

14

*Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds,sub nom. Ashcroft v. Iqbal*, 128 S. Ct. 2931 (2009); *see also Richardson*, 347 F.3d at 435; *Wright v. Smith*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

Conspicuously absent from plaintiff's second amended complaint are any allegations regarding the involvement of defendants Plescia and Griffin in the events giving rise to plaintiff's claims.  During his deposition, plaintiff acknowledged that he was never examined by defendant Griffin. Defendants' Exhibits (Dkt. No. 37-9) Exh. 4 at p. 10.  Nowhere in plaintiff's second amended complaint or his responsive papers, moreover, is there any indication of a proper basis upon defendant Superintendent Plescia's liability could be determined.  Indeed, plaintiff testified at his deposition that he named Plescia because he was in charge of the prison facility and admitted that he had no personal involvement in plaintiff's medical care. *Id.* at p. 49.  Under these circumstances, I recommend dismissal of plaintiff's claims against Plescia and Griffin based upon lack of personal involvement.

    D.    Deliberate Medical Indifference

In their motion, defendants challenge plaintiff's ability to establish

15

their deliberate indifference to his medical needs, given the undisputed facts established in the record.

The Eighth Amendment, which proscribes cruel and unusual punishment, encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 104, 97 S. Ct. 285, 290, 291 (1976); *see also Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia*, *Estelle*).  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus, the conditions of an inmate's confinement are subject to Eighth Amendment scrutiny.  *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981)).  A claim alleging that prison conditions violate the Eighth Amendment must satisfy both an objective and subjective requirement–the conditions must be "sufficiently serious" from an objective point of view, and plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference".  *See Leach v. Dufrain*, 103 F. Supp.2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing

16

*Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord,*
No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn,
J. & Homer, M.J.); *see also*, *generally*, *Wilson*, 501 U.S. 294, 111 S. Ct.
2321.  Claims that prison officials have intentionally disregarded an
inmate's medical needs implicate the Eighth Amendment's prohibition of
cruel and unusual punishment.  *Estelle*, 429 U. S. at 104, 97 S. Ct. at 291.

### 1. Serious Medical Need

In order to state a medical indifference claim under the Eighth
Amendment, a plaintiff must first allege a deprivation involving a medical
need which is, in objective terms, "'sufficiently serious'".  *Hathaway v.
Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (quoting *Wilson*, 501 U.S. at 298,
111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S.
1154, 115 S. Ct. 1108 (1995).  A medical need is serious for constitutional
purposes if it presents "'a condition of urgency' that may result in
'degeneration' or 'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698,
702 (2d Cir. 1998) (citations omitted).  A serious medical need can also
exist where "'failure to treat a prisoner's condition could result in further
significant injury or the unnecessary and wanton infliction of pain'"; since
medical conditions vary in severity, a decision to leave a condition

untreated may or may not be unconstitutional, depending on the facts*. Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*, 143 F.3d at 702).  Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'the existence of chronic and substantial pain.'"  *Chance*, 143 F.3d at 701 (citation omitted); *LaFave v. Clinton County*, No. CIV. 9:00CV774, 2002 WL 31309244, at *3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.) (citation omitted).

For the purposes of their motion, defendants do not contest plaintiff's assertion that his condition was sufficiently serious to merit Eighth Amendment protection.  Indeed, plaintiff's complaints of extreme pain in his ear, jaw, neck and throat, the inability to eat, swelling and redness, and repeated requests for sick call, leading ultimately to his admission into AMCH for treatment, appear to satisfy this prong of the medical indifference test, at least at this stage in the proceedings.  *See Brown v. Bascomb*, No. 05-CV-1466, 2008 WL 4283367, at *5 (N.D.N.Y. Sept. 16, 2008) (Mordue, C.J.) (holding that "excruciating pain, the

18

inability to eat, continually requesting sick calls, and the eventual

extraction of the tooth arises to the necessary level of seriousness");

*Bennett v. Erie County Holding Ctr. Medical Dep't*, 2006 WL 897817, at *6

(W.D.N.Y. March 31, 2006) (Payson, M.J.) (holding that "substantial and

frequent pain" in an abscess that followed jaw surgery is serious); *Curry v.*

*Mazzuca*, No. 05-CV-1542, 2006 WL 250487, at *8 (S.D.N.Y. Feb. 2,

2006) (Buchwald, J.) (determining that burst abscess in mouth "was not

life-threatening," but interfered with eating and sleeping enough to be

sufficiently serious).

2.     Deliberate Indifference

In addition to establishing the existence of a serious medical

condition, to prevail on his Eighth Amendment claim plaintiff must also

establish indifference to that condition on the part of one or more of the

defendants.  *Leach v. Dufrain*, 103 F. Supp. 2d at 546.  Deliberate

indifference exists if an official "knows of and disregards an excessive risk

to inmate health or safety; the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837,

114 S. Ct. at 1978; *Leach*, 103 F. Supp.2d at 546 (*citing Farmer*, 511 U.S.

at 837, 114 S. Ct. at 1970); *Waldo*, 1998 WL 713809, at *2 (*citing Farmer*, 511 U.S. at 837, 114 S. Ct. at 1970).

It is well established that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not alone provide a basis to find a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd* 970 F.2d 896 (2d Cir. 1992), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992).  Diagnostic techniques and treatments are "classic example[s] of matters for medical judgment"; accordingly, prison medical staff is vested with broad discretion to determine what method of diagnosis and/or treatment to provide its patients. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp.2d 261, 264 (W.D.N.Y. 1998).

Where a plaintiff's claim is based on a delay in medical treatment, the plaintiff must show that substantial harm resulted from the delay itself. *Bennett*, No. 03-CV-6393, 2006 WL 987817, at *8 (*citing Evans v. Manos*, 336 F. Supp. 2d 255, 262 (W.D.N.Y. 2004)). As the court in *Bennett* noted,

20

> [a]lthough a delay in medical care can demonstrate
> deliberate indifference to a prisoner's medical
> needs, a prisoner's Eighth Amendment rights are
> violated only where a delay reflects deliberate
> indifference to a serious risk of health or safety, to a
> life-threatening or fast-degenerating condition or to
> some other condition of extreme pain that might be
> alleviated through reasonably prompt treatment.

*Id.* (internal quotation marks omitted).  In that regard, the Second Circuit

has held that "(1) outright refusal of any treatment for a degenerative

condition that tends to cause acute infection and pain if left untreated *and*

(2) imposition of a seriously unreasonable condition on such treatment"

both constitute deliberate indifference on the part of prison officials.

*Harrison*, 219 F.3d at 138 (emphasis in original).

### a.   Nurse Mosher

Defendant Mosher's involvement in plaintiff's relevant care and

treatment was extremely limited.  Plaintiff was seen by Nurse Mosher on

January 14, 2006 at emergency sick call.  Based upon her review of

available records Nurse Mosher was aware that plaintiff was seen by a

dentist the previous day, had a follow-up appointment scheduled, and had

been given pain medications for his condition.  With that knowledge, and

in light of the protocol at Washington that emergency sick calls are

reserved for life threatening illnesses or conditions, defendant Mosher

took no further steps.

Based upon these circumstances, no reasonable fact finder could conclude that defendant Mosher was deliberately indifferent to plaintiff's serious medical needs.  The absence of available doctors after hours and the lack of appointments for non-life threatening conditions represent legitimate reasons for not providing treatment to an inmate.  *See Croft v. Hampton*, No. 06-3838, 2008 WL 2744332, at *4-5 (8th Cir. July 15, 2008) (holding that delaying treatment of prisoner's injury over the weekend to the next business day was not deliberate indifference where prisoner "submitted no medical evidence showing and negative effect of the delay"); *see also Harrison*, 219 F.3d at 138. There is no evidence in the record indicating that plaintiff's condition was exacerbated by the delay. *See Bennett*, 2006 WL 987817, at *8; *Evans*, 336 F. Supp. 2d at 262. Because there is no evidence in the record tending to prove that Nurse Mosher believed that plaintiff's condition presented a serious risk of harm if not treated and that she disregarded such risk, and because even her negligent failure to discover this condition would not be actionable under section 1983, *Estelle*, 429 U. S. at 105-106 and n. 14, 97 S. Ct. at 291-292, I recommend that defendants' motion as to Nurse Mosher be

granted, and plaintiff's claims against her be dismissed.

### b.   Nurse Stipano

Nurse Stipano's involvement in plaintiff's care and treatment was only slightly less modest than that of Nurse Mosher.  Plaintiff was seen by Nurse Stipano on or about January 16, 2006 during emergency sick call.[7] According to Stipano, and plaintiff does not dispute this fact, Colon left the clinic on that date before Nurse Stipano's examination could be completed and acknowledges that Stipano did him a favor by moving his January 23, 2006 appointment with a prison physician up to the following day.  *See* Plaintiff's Memorandum (Dkt. No. 40) at p. 3.

Under these circumstances, no reasonable fact finder could conclude that defendant Stipano was deliberately indifferent to plaintiff's serious medical needs, especially considering that plaintiff could not be seen on January 16, 2006 by a physician because that day was a holiday, and that there is no evidence in the record suggesting that plaintiff was

---

[7]      There is slight discrepancy as to when plaintiff was seen by Nurse Stipano.  Stipano states, and plaintiff's medical records confirm, that he was seen by Stipano on Monday, January 16, 2006.  Stipano Decl. (Dkt. No. 37-4) ¶ 1; *see also* AHR at p. 9.  Plaintiff contends, on the other hand, that he was examined by Nurse Stipano on Sunday, January 15, 2006.  Second Amended Complaint (Dkt. No. 8) at p. 3; *see also* Defendants' Exhs. (Dkt. No. 37-9) Exh. 4 at p. 20.  It is unnecessary to resolve this question, however, since it is not determinative of the outcome or otherwise material to my recommendation.

substantially harmed by the brief delay.  *See Croft,* 2008 WL 2744332, at

*4-5, *Bennett,* 2006 WL 987817, at *8; *Evans,* 336 F.Supp. 2d at 262; *see*

*also Harrison*, 219 F.3d at 138.  I therefore recommend that plaintiff's

medical indifference claims against Nurse Stipano be dismissed.

c.    <u>Dr. Trachtman</u>

Plaintiff's claims against Dr. Trachtman fare no better.  While there

is some dispute over what precisely transpired during Dr. Trachtman's

examination of the plaintiff on January 17, 2006, at that point Dr.

Trachtman did not discern any medical condition requiring immediate care

and treatment.  Responsibly, in light of his inability to complete an

examination on that date, Dr. Trachtman requested to see plaintiff again

on January 18, 2006, the following day, at which point he discovered

plaintiff's abscess and promptly referred him to the AMCH for treatment.

At best, plaintiff's claim against Dr. Trachtman arising out of his January

17, 2006 actions sounding in negligence, which is not cognizable under

section 1983.  *Rosales v. Coughlin*, 10 F. Supp.2d at

264 (citing *Estelle*, 429 U.S. at 106 and n.14, 97 S. Ct. at 285 and

*Chance*, 143 F.3d at 703) (other citations omitted).

In sum, plaintiff's claims against defendants Trachtman, Stipano,

24

and Mosher implicate a four-day delay in providing plaintiff with needed

treatment.  Over the course of that period, plaintiff appears to have had

access to ample pain medication.  There is no evidence in the record to

suggest that this four-day delay caused the plaintiff substantial harm.  *See*

*Bennett*, 2006 WL 987817, at *8-9 (citing *Napier v. Madison County,*

*Kentucky*, 238 F.3d 739, 742 (6th Cir. 1001) (an inmate who complains

that delay in medical treatment rose to a constitutional violation must

place verifying medical evidence in the record to establish detrimental

effect of the delay in medical treatment) (internal quotations and citation

omitted)). The delay in providing plaintiff necessary treatment in this case

is significantly briefer than those which have led to the findings of

deliberate indifference or the existence of fact issues precluding summary

judgment.  *See, e.g.*, *Harrison*, 219 F.3d at 136 (holding that refusal to fill

plaintiff's cavity for a year presented a material issue of fact as to whether

defendants denied plaintiff treatment of a serious condition and were

deliberately indifferent to plaintiff's serious medical needs); *Brown*, 2008

WL 4283367, at *5 (question of fact precluding summary judgment where

plaintiff's complaints of excruciating pain, the inability to eat, continually

requesting sick calls over four months and the eventual extraction of the

tooth occurred); *Goodnow v. Palm*, 264 F. Supp. 2d 125, 133 (D. Vt. 2003) (finding a material issue of fact as to whether plaintiff's medical condition was sufficiently serious and defendants' were deliberately indifferent where plaintiff established that he complained of cavities, a broken tooth and pain for at least seven months without treatment). Accordingly, I recommend a finding that no reasonable fact finder could conclude that defendants Mosher, Stipano, or Trachtman were deliberately indifferent to plaintiff's serious medical needs.

IV.   SUMMARY AND RECOMMENDATION

While named as defendants in plaintiff's second amended complaint, there are no allegations that would establish their personal involvement and thus provide a proper basis for finding Superintendent Plescia and Nurse Administrator Griffin liable for any constitutional deprivations resulting from plaintiff's medical care at Washington.  I therefore recommend dismissal of plaintiff's claims against them based on the lack of their personal involvement.

Turning to plaintiff's claims of deliberate indifference as against Dr. Trachtman and Nurses Mosher and Stipano, the issue presented is whether a reasonable fact finder could conclude that a four-day delay in

treating plaintiff's tooth abscess, during which time he was provided with ample pain medication and examined by medical care providers, violated plaintiff's constitutional protection against cruel and unusual punishment. Because I conclude that no reasonable fact finder could find that those individuals were deliberately indifferent to plaintiff's medical needs in that by their actions they knew of and disregarded an excessive risk to Colon's health or safety, I recommend dismissal of plaintiff's deliberate indifference claims against them.[8]

Based upon the foregoing, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 37) be GRANTED, and that all of plaintiff's claims against the various named defendants be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within TEN days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(e), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

---

[8]      In light of this disposition, I find it unnecessary to address defendants' additional argument of their entitlement to qualified immunity from suit.

It is hereby ORDERED that the clerk of the court serve a copy of

this Report and Recommendation upon the parties in accordance with this

court's local rules.

David E. Peebles
U.S. Magistrate Judge


Dated:      July 27, 2009
            Syracuse, NY

28